IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 2:16cr91 |
| v. ) | |
| ) | |
| RONTAZE D. ELEY, ) | |
| ) | |
| Defendant. ) | |

POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and V. Kathleen Dougherty, Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guideline range to be a term of 15 to 21 months' imprisonment followed by 1 to 3 years of supervised release, based upon an Offense Level Total of 7 and a Criminal History Category of VI. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and does not dispute any of the sentencing factors set forth therein nor the guidelines range calculation. There are no outstanding objections to the PSR.

The United States respectfully submits that the guidelines range has been properly calculated, but requests the Court impose a downward variant sentence of 8 months. Such a term is sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

**I.    Background**

On June 15, 2016, the defendant was named in a single-count Criminal Information charging him with escaping from custody, in violation of 18 U.S.C. § 751(a). These charges

stem from Mr. Eley's flight from a "halfway house" where he was confined to complete his sentence on a previous federal felony conviction. Shortly after he was charged, on June 21, 2016, Mr. Eley pleaded guilty before the United States Magistrate Judge Robert J. Krask without a written plea agreement. Judge Krask accepted the defendant's plea and continued the matter pending sentencing, which is set for September 21, 2016. Mr. Eley has not been found, nor adjudged, guilty of his offense.

II.     **Position on Sentencing and Argument**

For the reasons that follow, the government respectfully submits that a sentence below the floor of the defendant's advisory sentencing guidelines range is appropriate and reasonable in light of the Section 3553(a) factors.

    A.     Nature and Circumstances of the Offense

On February 25, 2013, United States District Judge Mark S. Davis sentenced Mr. Eley to a 53-month term of imprisonment after his conviction for possessing a firearm after a felony conviction. See United States v. Eley, Criminal Case No. 2:12cr117. The defendant was further sentenced to a three year term of supervised release, to commence upon his release from imprisonment. After serving approximately three years of his sentence in various Bureau of Prisons (BOP) institutions, Mr. Eley was transferred to Rehabilitation Services #1 – a residential reentry center or "halfway house" in Norfolk, Virginia – to complete his term of imprisonment. Had he remained at Rehabilitation Services #1 without incident, the defendant would have been released from custody on his underlying charge on December 16, 2016. Instead, on May 11, Mr. Eley escaped from Rehabilitation Services #1 by running away from the facility on foot.

This flight was precipitated by an argument between the defendant and halfway house staff about Mr. Eley's illicit possession of a smartphone, in violation of facility policy. The

defendant had previously been caught with a cell phone on two other occasions and reprimanded by the staff.  This time, in Mr. Eley's words, he "just snapped' when confronted about his phone, and ran out the front door of the building.

The staff placed Mr. Eley on escape status, and began to make calls to family and emergency contact numbers in an attempt to locate him.  When these efforts were unsuccessful, the BOP Residential Reentry Manager requested the assistance of the United States Marshals Service (USMS) in apprehending and detaining Mr. Eley.  Approximately one week later, on May 18, 2016, the USMS Fugitive Task Force located and arrested Mr. Eley at a retail store in Virginia Beach, Virginia.  He was taken into custody without incident and promptly confessed to USMS representatives that he ran away from Rehabilitation Services #1 without permission.

Importantly, there is nothing to indicate that, during the seven days he was a fugitive, Mr. Eley committed a new crime or sold or used illegal substances.  Instead, he began to work "under the table" at a friend's grocery store, in exchange for a place to live.  Though encouraged by his mother and his attorney to turn himself in and return to the halfway house, Mr. Eley refused to do so and chose to stay a fugitive.  His stubborn refusal resulted in substantial resource expenditure by the USMS.

In short, the defendant is before the Court having made a very bad decision.  His knee-jerk reaction to a minor dispute with halfway house staff has cost him significant freedom, and will likely extend his time in institutional custody by many months.  When coupled with his prior history of failing to appear as directed, <u>see</u> <u>infra</u> Section II(B), Mr. Eley's current offense reflects a continued pattern of disregarding court-imposed rules.  His offense is undoubtedly a serious one, for which an additional term of incarceration is warranted.  Because, however, his offense was of a short duration (one week), did not involve additional criminal conduct, and Mr. Eley

promptly cooperated with law enforcement and pleaded guilty, the United States submits that a sentence within the advisory guidelines range is greater than necessary to capture the nature of the defendant's crime.

      B.    <u>History and Characteristics of the Defendant</u>

Mr. Eley was raised in challenging circumstances. His parents were separated for his entire life, and his father is currently serving a lengthy prison sentence for the murder of the defendant's stepmother. His mother tried to raise Mr. Eley and his five siblings alone, and did the best she could, but it was a difficult family situation with little adult supervision. The defendant was, fortunately, able to find a mentor in a local automotive shop owner for whom he worked as a pre-teen, an experience which provided the defendant job skills and a positive role model. Despite this relationship, however, Mr. Eley had problems in school, began using drugs and alcohol at a young age, and started suffering from a severe depression.

The defendant is the father to four daughters, aged 9 to 15 years old. According to the girls' mother, he is an active father when not incarcerated and, upon his release to Rehabilitation Services #1 in March 2016, resumed regular contact with them. The defendant's serial incarceration has been difficult on his family, especially his eldest daughter, and Mr. Eley has been unable to provide consistent emotional and financial support to his children. As a result, he is more than $18,000 in arrears in child support for his family. PSR ¶ 62.

Mr. Eley's criminal history is quite substantial. <u>See</u> <u>generally</u> PSR ¶¶ 22-50. He has been convicted of 20 crimes, and has been arrested nine other times, resulting in 13 Criminal History Points and his placement in Criminal History Category VI – the most serious available under the guidelines. His convictions are wide-ranging and varied, and include possession of marijuana, in 2002, 2008 and 2009, possession with intent to distribute marijuana in 2005, and

possession of cocaine in 2005. Id. at ¶¶ 23, 31, 32, 25. He was also arrested on charges for assault and battery, threatening bodily harm, robbery, and carjacking. Id. at ¶¶ 43, 44, 49.

Troublingly, and closely related to the offense for which he is now to be sentenced, Mr. Eley was convicted of contempt of court in 2006 and has five convictions for failure to appear, occurring in 2007, 2008, two convictions in 2009 and a final conviction in 2010. Id. at ¶¶ 27, 29, 30, 33, 35. He also has a history of violating the terms of his court-ordered probation, including three probation violations on his 2005 drug convictions. Id. at ¶ 25. In fact, Mr. Eley still has a pending probation violation in Chesapeake stemming from a 2012 probation violation. Id. The defendant is a repeat player in the criminal justice system and has shown a repeated disregard for court orders.

Most likely due to his lack of much formal education, and his repeated stints of incarceration, Mr. Eley has not been able to hold a steady job. He has, however, gained employment at McDonald's, JC Penney's, Rally's, Winn Nursery and Pizza Hut, among other odd-jobs, since 1999. PSR at ¶¶ 92-103. He has also obtained a number of professional certificates, including welding and funeral services, and has an expressed desire to attend school to become a mortician. Given how fully Mr. Eley took advantage of the educational opportunities provided by BOP, the United States is confident he can achieve this goal if he chooses to do so.

Mr. Eley is a very different man today, however, than he was at the time he was sentenced on his felon in possession of a firearm charge in 2013. During his incarceration, he completed his GED and took a variety of educational courses, such as Money Management, Money Smart, Marketing, Business Planning, and Parenting. Id. ¶ 85. He also completed the 500-hour Residential Drug Abuse Program, and two additional substance abuse programs, while

5

in federal institutional custody.  Id. ¶ 82.  Upon his release to Rehabilitation Services #1, he obtained two jobs – at a restaurant and a car dealership – and maintained continued employment until he made the rash decision to escape from the halfway house on May 11, 2016.  Id. ¶ 92.  These positive steps show the defendant's growing maturity and understanding of how to live a law-abiding and productive life.  Of remaining concern, however, is Mr. Eley's mental health.  He was diagnosed with severe depression in 2009, and admitted to self-medicating with drugs and alcohol.  Id. ¶ 72.  While in custody on his most recent charge, in 2015, he was referred to anger management counseling by BOP staff, but chose not to complete it.  Id. ¶ 73.  To this day, he admits having anger management issues.  Id. ¶ 74.  Given the nature of his offense – snapping after an argument with the halfway house staff over a cell phone – the United States submits that the defendant needs mental health treatment and counseling to cope with his anger issues and provide more clear-headed decision-making.

Though, the defendant's significant and varied criminal history weighs heavily against him, the United States submits that the positive changes he has made provide evidence of his ability to stay on the right path, and weigh in favor of a sentence of 8 months.

    C.    Other Factors to be Considered Under 18 U.S.C. § 3553(a) and Request for Downward Variant Sentence

The sentence selected for Mr. Eley should seek to afford him adequate deterrence to future criminal conduct, in addition to the other factors a sentencing court is to consider under Section 3553(a).  The defendant needs to get the message – once and for all – that he cannot ignore the court or his court-ordered responsibilities.  Additionally, the sentence imposed should provide a warning to other offenders in custody at halfway houses or other non-secure custodial spaces that there are consequences for fleeing from their designated facility.

The United States submits that a sentence of 8 months – below the bottom of Mr. Eley's properly calculated advisory guidelines range – would best fulfill the purposes of the statutory sentencing factors, for the primary reasons.  First, the sentencing guidelines do not take into account the length of the time defendant was away from his facility.  Here, Mr. Eley was absent for just over one week, as compared to months or even years out of custody.  Second, Mr. Eley's escape did not involve threats or force, premeditation or fraud – rather his simple, frustrated flight on foot.  Finally, Mr. Eley did not commit any new crimes after escaping from the halfway house and, in fact, found new employment while gone.  In short, the circumstances of his flight and his conduct while at-large weigh in favor of a sentence of 8 months.

In determining Mr. Eley's sentence, the court should consider that he will still need to complete his sentence for his underlying conviction for possession of a firearm after a felony conviction (Case No. 2:12cr117).  The Bureau of Prisons has calculated the defendant's release on that charge as December 28, 2016.  PSR ¶ 110.  Following his release, he will begin to serve the three-year term of supervised release imposed by Judge Davis.  Pursuant to U.S.S.G. § 5G1.3(a), the sentence for Mr. Eley's escape from custody conviction should run *consecutively* to the underlying offense.  See U.S.S.G. § 5G1.3(a) (noting that if the offense was committed "while the defendant was serving a term of imprisonment" the sentence "shall be imposed to run consecutively to the undischarged term of imprisonment.")[1]  This factor also weighs in favor of the United States' request that a sentence below the bottom of the guidelines is appropriate.  But for his rash decision, Mr. Eley would still be enjoying the relative freedom of completing his sentence at Rehabilitation Services #1.  Instead, he is back in institutional custody, where he will

---

[1] In contrast, Mr. Eley's term of supervised release on this new charge may run concurrently with the three-year term imposed by Judge Davis.  See 18 U.S.C. § 3624(e) (noting that the term of supervised release "runs concurrently with any Federal . . . term of probation or supervised release . . . for another offense to which the person is subject.").

7

remain until at least December 28 of this year, and then for an additional term of incarceration to be determined by the court. An additional 8 months of imprisonment would serve to fulfill the purposes of Section 3553(a) and adequately capture his offense and his characteristics as a defendant.

### III. Conclusion

The government respectfully submits that a sentence of 8 months is sufficient, but not greater than necessary, and asks the court to impose the same.

    Respectfully submitted,

    Dana J. Boente
    United States Attorney

By:    /s/
    V. Kathleen Dougherty
    Assistant United States Attorneys
    Attorney for the United States
    United States Attorney's Office
    101 West Main Street, Suite 8000
    Norfolk, VA 23510
    Office Number: 757-441-6331
    Facsimile Number: 757-441-6689
    V.Kathleen.Dougherty@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to the following:

Suzanne V. Katchmar
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(Counsel for Rontaze D. Eley)

I HEREBY CERTIFY that on this 14th day of September, 2016, I mailed a true and correct copy of the foregoing to the following:

Tara R. Gill
U.S. Probation Officer
827 Diligence Drive, Suite 210
Newport News, Virginia 23606

/s/
V. Kathleen Dougherty
Assistant United States Attorneys
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
V.Kathleen.Dougherty@usdoj.gov